UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHWEST ADMINISTRATORS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ACE PAVING CO., INC., <br><br> Defendant. | Case No. 10-cv-647-JPD <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

I.     INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Northwest Administrators, Inc. moves the Court for summary judgment against defendant Ace Paving Co., Inc. Dkt. 8; Dkt. 13. Defendant opposes the motion. Dkt. 12. After careful consideration of plaintiff's motion, defendant's opposition, plaintiff's reply, and the balance of the record, the Court GRANTS plaintiff's motion for summary judgment.

II.     BACKGROUND

The relevant facts of this case, as set forth by plaintiff's briefs and supporting documents, are uncontroverted by defendant. Plaintiff is the authorized administrative agent and assignee of the Washington Teamsters Welfare Trust (the "Trust"). The Trust is an

ORDER
PAGE - 1

employee benefit plan established by the Washington Teamsters Welfare Trust Agreement and Declaration of Trust (the "WTWT Trust Agreement"), and governed by § 302(c)(5) of the Labor Management Relations Act of 1947 and the Employee Retirement Income Security Act of 1974 ("ERISA").  *See* 29 U.S.C. § 186(c)(5); 29 U.S.C. § 1001 *et seq.,* as amended (1988). The Trust provides medical, dental, vision, time loss, and death benefits to eligible employees. *See* Dkt. 11 at 2-3 (Ditter Decl.); *id*., Ex. A. at 5.

Employers bound by a 2007-2012 collective bargaining agreement ("CBA") with a local Teamsters union, the International Brotherhood of Teamsters Local 589 ("Local 589"), are required to remit monthly contributions to the Trust at specified rates "for each compensable man hour of Teamsters employed by such Employers in work contained under the terms of this Agreement."  *See id*., Ex. C at § 7.2.1.  The CBA also requires employers to make their required contributions to the Trust "on or before the tenth (10th) day of the month following the month in which the hours were worked. . . ."  *Id*.  The defendant is such an employer.

Defendant became bound to the terms of the 2007-2012 CBA, as well as the WTWT Trust Agreement, when it entered into a Heavy Construction Compliance Agreement (the "Compliance Agreement") with Local 589 on July 28, 2003.[1]  *See id*. at 4 (Ditter Decl.); *id*., Ex. B.  Defendant acknowledges that it is a party to the above-described agreements, and is therefore obligated to remit contributions to the Trust by the tenth day of each month following work by his eligible Teamster employees.  *See* Dkt. 12, Ex. 1 at 2 (Yingling Decl.).

---

[1] The Compliance Agreement provides that defendant is bound by any "successive collective bargaining agreements" to a 2003-2007 CBA, which in this case is the Teamsters 2007-2012 Building, Heavy and Highway Construction Labor Agreement. *Id*., Exs. B and C.  Similarly, although the Compliance Agreement states that defendant is bound by the Teamsters Construction Industry Welfare Trust ("TCIWT") Agreement, it also provides that defendant is a party to agreements entered into by TCIWT's "successors in trust."  *Id*.  Following a merger effective January 1, 2010, the Trust became the TCIWT's successor trust and the WTWT Trust Agreement became the TCIWT Agreement's successor trust agreement.  *See id*. at 1-2 (Ditter Decl.).

ORDER
PAGE - 2

Pursuant to the WTWT Trust Agreement, a participating employer who makes delinquent contributions is required to pay "liquidated damages of 20% of the amount of Employer contributions due on such date following the date on which Employer contributions became delinquent. . . ." Dkt. 11, Ex. A at 8.  In addition, the WTWT Trust Agreement provides that employers must pay interest for the delinquent contributions, and "reimburse the Trust Fund for all of its costs, including . . . all reasonable attorneys' fees incurred by the Trust Fund in connection" with the collection of the employer's delinquent payments. *Id*.

Defendant acknowledges that its contributions to the Trust for work performed in February and March 2010 "were not timely paid." Dkt. 12, Ex. 1 at 3-4 (Yingling Decl.). These contributions were due on March 10, 2010, and April 10, 2010, respectively. *See id*. On April 15, 2010, plaintiff initiated this action against defendant for the delinquent contributions, which totaled $19,896.16, as well as liquidated damages, interest, and attorneys' fees and costs. *See* Dkt. 1 at 2-3; Dkt. 11 at 8 (Ditter Decl.). Approximately one month later, on May 17, 2010, defendant paid the full amount of the delinquent contributions. *See* Dkt. 9 at 1-2 (Azus Decl.); Dkt. 11 at 8 (Ditter Decl.); Dkt. 12, Ex. 1 at 3 (Yingling Decl).

Plaintiff's motion for summary judgment seeks $3,979.23 in liquidated damages, which is 20% of $19,896.16, as well as $105.58 in interest, $2,858.40 in attorneys' fees, and $453.70 in costs. *See* Dkt. 11, Ex. E; Dkt. 14 (Leahy Decl.). Defendant acknowledges its obligation to pay plaintiff interest, attorneys' fees, and costs, and does not challenge plaintiff's calculations.[2] *See* Dkt. 12, Ex. 1 at 4 (Yingling Decl.). Defendant contends, however, that the liquidated

---

[2] Although defendant states that it "does not dispute that it will owe 'reasonable' attorney's fees and costs to the Trust in this action," defendant also requests an award of attorneys' fees under 29 U.S.C. § 1132(g)(1) in the event that the Court finds "that 29 U.S.C. § 1132(g)(2) does not apply to this action." Dkt. 12, Ex. 1 at 4 (Yingling Decl.); *see id*. at 13-14. As discussed below, the Court finds that § 1132(g)(2), rather than § 1132(g)(1), governs this case, and therefore defendant is not entitled to attorneys' fees.

ORDER
PAGE - 3

damages provision of the WTWT Trust Agreement constitutes an unenforceable penalty under state and federal common law, and that liquidated damages may not be awarded under ERISA if there are no unpaid contributions at the time judgment is entered. *See* Dkt. 12; *id.*, Ex. 1 at 6-8 (Yingling Decl.). For the reasons discussed below, the Court finds defendant's arguments unpersuasive.

### III. JURISDICTION

The parties have consented to this matter proceeding before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). *See* Dkt. 5 at 3. The Court has exclusive jurisdiction over this action pursuant to 29 U.S.C. §§ 1132(e)(1) and (f). Venue is proper because the Trust Funds are administered in this district. 29 U.S.C. § 1132(e)(2).

### IV. DISCUSSION

#### A. *Summary Judgment Standard*

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is a fact relevant to the outcome of the pending action. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Genuine issues of material fact exist when the evidence would enable "a reasonable jury . . . [to] return a verdict for the nonmoving party." *Id.* In response to a summary judgment motion that is properly supported, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial, and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e); *Celotex Corp. v. Cattrett,* 477 U.S. 317, 323 (1986). A mere scintilla of evidence, however, is insufficient to

create a factual dispute.  *See Anderson,* 477 U.S. at 252.  To defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations, or argumentative assertions that material facts are in dispute.  *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630-32 (9th Cir. 1987).

      B.    *ERISA Governs the Liquidated Damages Clause of the WTWT Trust Agreement*

Defendant states that, in addition to the delinquent contributions for February and March 2010, it has consistently been forced to delay its required contributions to the Trust over the past two years due to the economic downturn and resulting loss in revenues.  Dkt. 12, Ex. 1at 6-7 (Yingling Decl.).  In addition, defendant asserts that the "liquidated damages that Northwest has forced Ace to pay over the past two years was a principle (sic) cause of Ace being late in making its payments."  *Id*. at 7.  Thus, defendant contends that the liquidated damages provision of the WTWT Trust Agreement operates as a penalty, which is unenforceable under state and federal common law.  *See* Dkt. 12 at 11.  To support this argument, defendant relies upon the Washington Supreme Court's assertion that in order for a liquidated damages clause in a lease to be enforceable, "the amount fixed must be a reasonable forecast of just compensation for the harm that is caused by the breach . . . [and] the harm must be such that it is incapable or very difficult of ascertainment."  *Walter Implement, Inc. v. Focht*, 107 Wn.2d 553, 558-59, 730 P.2d 1340 (1987).  Defendant also cites the Ninth Circuit's decision in *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.* as support for the proposition that a liquidated damages provision is void as a penalty under federal common law unless the harm caused by a breach is very difficult or impossible to estimate, and the amount fixed is a reasonable forecast of just compensation for the harm caused.  875 F.2d 212, 215 (9th Cir. 1989) (holding that ERISA's damages provision was

ORDER
PAGE - 5

inapplicable because the defendant had paid all contributions owed to the trust before the lawsuit was initiated).

Defendant's reliance upon state and federal common law in this case is unavailing, because ERISA governs cases such as this one, where an employer owed contributions to an employee benefit plan at the time the lawsuit was initiated. *See* 29 U.S.C. § 1144(a) (providing that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ."); *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001) (observing that ERISA's preemption provision is "clearly expansive"); *General Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993) ("ERISA's preemption clause is one of the broadest ever enacted by Congress, and it preempts even generally applicable laws, not just laws aimed exclusively at employee benefit plans. . . .") (internal citations omitted).  ERISA provides specific remedies for delinquent contributions, including an award of "(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of— (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), [and] (D) reasonable attorney's fees and costs of the action, to be paid by the defendant. . . ." 29 U.S.C. § 1132(g)(2).

Furthermore, ERISA obligates participating employers to make contributions to a multi-employer trust fund in accordance with the terms of the trust agreement or collective bargaining agreement. *See* 29 U.S.C. §§ 1102(a), 1103(a), 1145.  The language of a written trust agreement defines the rights and obligations of the parties to the trust to the extent they are consistent with ERISA. *Id.* at § 1145; *Santa Monica Culinary Welfare Fund v. Miramar*

ORDER
PAGE - 6

*Hotel Corp.*, 920 F.2d 1491, 1493-94 (9th Cir. 1990) (internal citations omitted).  As noted, the WTWT Trust Agreement provides that an employer shall pay liquidated damages of 20% of the amount of the delinquent contributions.  *See* Dkt. 11, Ex. A at 8.  Defendant has made no showing in these proceedings that this provision is somehow inconsistent with ERISA, which also provides for liquidated damages in the amount of 20% of any delinquent contributions.

Finally, the Ninth Circuit has held that § 1132(g)(2) is "mandatory and not discretionary."  *Northwest Adm'rs Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (quoting *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying*, *Co*., 746 F.2d 557, 569 (9th Cir. 1984)).  Section 1132(g)(2) requires only that: "(1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award."  *Id.* (citing *Idaho Plumbers & Pipefitters Health & Welfare Fund*, 875 F.2d at 215).

Here, the Court finds that all three criteria for a mandatory award under § 1132(g)(2) are satisfied.  *See* Dkt. 12 at 5.  Defendant admits that there were unpaid contributions at the time plaintiff filed this lawsuit, and that the WTWT Trust Agreement provides for an award of liquidated damages.  *See id.*; *id.*, Ex. 1 at 2, 4 (Yingling Decl.).  As discussed in greater detail below, with respect to the final factor, the Ninth Circuit has held that "mandatory fees are available under § 1132(g)(2) 'notwithstanding the defendant's post-suit, prejudgment payment of the delinquent contributions themselves.'"  *Albertson's*, 104 F.3d at 258 (quoting *Carpenters Amended & Restated Health Benefit Fund v. John W. Ryan Constr. Co.,* 767 F.2d 1170, 1175 (5th Cir. 1985)).

Accordingly, the state and federal common law cases cited by defendant are inapposite, as such law is preempted by ERISA.  While the Court is sympathetic to defendant's apparent

plight, defendant is obligated to pay liquidated damages as a result of its failure to timely pay contributions to the Trust, regardless of its financial situation.

   C.  *Liquidated Damages Are Available Pursuant to § 1132(g)(2) If Unpaid Contributions Existed at the Time the Lawsuit was Filed*

Defendant argues that ERISA is inapplicable to this case because a judgment for unpaid contributions is a necessary predicate for an award of liquidated damages under § 1132(g)(2). Dkt. 12 at 5. Specifically, he asserts that where "there are no remaining 'unpaid contributions' to enter a judgment on . . . no judgment may be awarded in favor of the plan for unpaid contributions." Dkt. 12 at 6. Defendant relies upon statutory language providing for an award of liquidated damages "in an action to recover delinquent contributions . . . in which a judgment in favor of the plan is awarded. . . ." 29 U.S.C. § 1132(g)(2). He also points to statutory language providing that a liquidated damages award may not exceed "20 percent . . . of the amount [of unpaid contributions] determined by the court under subparagraph (A). . . ." *Id*. § 1132(g)(2)(C)(ii).

As the plaintiff points out, defendant's arguments are unavailing because the Ninth Circuit has held that an employer is liable for mandatory fees under § 1132(g)(2), including liquidated damages, "notwithstanding the defendant's post-suit, prejudgment payment of the delinquent contributions themselves." *Albertson's*, 104 F.3d at 258. Significantly, the Ninth Circuit has also expressly rejected defendant's argument that "a mandatory award under § 1132(g)(2) is improper because the employer voluntarily paid the delinquent contributions . . . thus the district court did not enter judgment against [the employer] relating to those contributions. . . ." *Id*. Instead, the court held that mandatory "[f]ees may be awarded even though there is no judgment on the merits or when the dispute has become moot because relief

ORDER
PAGE - 8

is otherwise obtained." *Id*. (citing *Lads Trucking Co. v. Board of Trustees of W. Conference of Teamsters Pension Trust Fund*, 777 F.2d 1371, 1375 (9th Cir. 1985)).

Indeed, defendant appears to concede that an interpretation of § 1132(g)(2) which authorizes an award of liquidated damages as long as unpaid contributions existed at the time the lawsuit was filed "is arguably the prevailing Ninth Circuit interpretation. . . ." Dkt. 12 at 9. Nevertheless, defendant posits that Ninth Circuit precedent incorrectly interprets the plain language of § 1132(g)(2). *Id*. at 9-10.

The Court declines defendant's invitation to interpret § 1132(g)(2) in a manner that is contrary to longstanding Ninth Circuit precedent. In doing so, the Court notes that with the exception of the Sixth Circuit, every Court of Appeals to consider the issue concurs with the Ninth Circuit's interpretation of § 1132(g)(2). *See UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 288-89 (3d Cir. 2007) (providing that § 1132(g)(2) remedies apply to all contributions unpaid at the time a suit is filed, even if the debts are partially satisfied before judgment); *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp*., 258 F.3d 645, 654 (7th Cir. 2001) ("The interest and liquidated-damages provisions of ERISA apply . . . only to contributions that are unpaid at the date of suit (not the date of judgment, as argued by the defendant)."); *Iron Workers Dist. Council v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995) ("[T]he provisions of § 1132(g)(2)(B) and (C) make reference to unpaid contributions not to establish a limit on qualifying judgments, but rather because the amount of an award of interest or liquidated damages should logically be predicated upon the amount of the unpaid contributions originally at issue, whether or not outstanding at the time of judgment, since that amount correctly measures the damage caused by the delinquency."). *See also Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857

F.2d 476, 478 (8th Cir. 1988) (agreeing that "unpaid contributions" accounted for in § 1132(g)(2) means "contributions unpaid at the time suit was filed[.]").

Thus, defendant's argument that § 1132(g)(2) is inapplicable to this case is unavailing. Pursuant to the WTWT Trust Agreement and § 1132(g)(2), plaintiff is entitled to liquidated damages, interest, attorneys' fees and costs.

V.  CONCLUSION

For the reasons discussed above, the Court finds no issues of fact regarding plaintiff's entitlement to the total amount of liquidated damages sought in this action, which equals 20% of the amount of defendant's delinquent contributions for the February and March 2010 employment periods. Accordingly, the Court hereby ORDERS as follows:

(1) Plaintiff's motion for summary judgment, Dkt. 8, is GRANTED.

(2) Judgment is awarded in favor of plaintiff and against defendant in the following amounts: $3,979.23 for liquidated damages; $105.58 for interest; $2,858.40 for attorneys' fees; and $453.70 for costs.

(3) The Clerk is directed to send copies of this Order to counsel for all parties.

DATED this 30th day of September, 2010.

*/s/ James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge